The next matter is number 221332, Richard Ferrari et al. versus Vitamin Shoppe Industries LLC. At this time, would attorney Mark Sigmund come to the podium and introduce himself on the record to begin? May it please the court. My name is Mark Sigmund and I represent the plaintiffs in this matter. And if I may, I would reserve two minutes for rebuttal. Yes. Thank you, your honor. Your honors, the central question in this case is actually fairly narrow. Where there is a nutrient that exists in both supplement form and in endogenous form, meaning that the human body produces it naturally, does the supplement manufacturer have to substantiate its claims with evidence about the actual supplement form? Or is evidence merely about the endogenous form enough? No court has explicitly and directly addressed that question, but the answer to the question is clear for many reasons. The manufacturer must have evidence about the supplement form of the nutrient. In this case, the district court held to the contrary, and in doing so, it clearly erred and should be reversed. So let me begin with the plain text of the statute as we always do. The statute here simply references the words nutrient and dietary ingredient. It doesn't define those terms. And so at the very minimum, I would say that it's ambiguous about whether that refers to the supplement form or the endogenous form as it exists in the body. And if there is any ambiguity here, it must be construed against preemption because there is a strong, strong assumption against preemption as the U.S. Supreme Court has held multiple times, most recently in 2005. And about the plain text, I made an argument that to me, I find to be the silver bullet, and Vitamin Shoppe never referenced that argument, never addressed it. And I don't think they have a response to it. And that is that some supplements out there exist, some ingredients exist only in supplement form. Take ginkgo biloba, that's ground up tree leaves. You put it in a capsule, you take the pill. That nutrient only exists in supplement form. And so if a manufacturer has to substantiate its claims about that, and they do, it has to substantiate that with evidence about the supplement form. That's the only form. Well here, with glutamine, the body just happens to produce glutamine naturally as well. And so what Vitamin Shoppe argues is that because of that happenstance, they are allowed to get by with mere evidence about the endogenous form. But there is no basis for holding that there's two different rules here. One for when it's ginkgo, which just happens to be supplement form only. And one over here, where it happens to exist endogenously as well. There's no statute, regulation, rule, case. There's nothing I've seen anywhere that suggests that there's two different rules. There is one rule here for everyone. And the rule, which is obvious for ginkgo, is that it has to be the supplement form. And it's the same here. You have to have evidence about what supplemental glutamine does. Now, my argument was misunderstood by Vitamin Shoppe throughout its brief. And so I do want to take one moment to make very clear what I'm arguing. I'm not arguing that Vitamin Shoppe has to substantiate any effects, or that glutamine has any specific effects on the body as far as addressing any specific problems or any disease conditions or anything like that. They actually cite some cases where the court made that exact distinction. And it said, you know what, the one about joint. It said, you don't have to prove that this supplement affects arthritis. In fact, you can't prove that. But you do have to prove, what you do have to substantiate, is that it has the general effects on structure function that the label claims. In that joint case, it was affects joint health, or aids joint health. Here, they've made claims. And they are, you know, in some level, structure function claims, that glutamine aids muscle recovery, that it supports anti-catabolism. That's fine. They still have to substantiate that. And they had to substantiate it with evidence about the supplement form. And they didn't do that. And that's why the court should reverse. But, so the glutamine, that it's naturally occurring in the body. And the glutamine that is in the bottle, in the supplement. Once in the human body, the role it plays in the body is the same. Do you agree with that? I'm sorry, though. The role that it plays in the human body is the same. Once it's absorbed. I believe that's true in the record. I mean, there's, I believe that's true, yes. Okay, so it's, both are glutamine. But what you're saying is that it has to be supported by scientific and reliable evidence that it plays the role the claim says it does. Yes. So why the distinction between endogenous and exogenous that you make in your brief? Because, I mean, let me go back to the example of Ginkgo biloba. So Ginkgo exists in supplement form. You take the supplement. If the supplement, if the claim is there, it is there that it aids with memory. Well, so you have to prove that it affects the body and structure and function by aiding with memory. And so here, if you take glutamine, but it doesn't actually do any, a supplement, but it does not actually aid with anticeptabolism, the supplement itself doesn't aid anything, then the claim on the label is false. Now, just because you go out there and eat a sandwich and your body produces glutamine naturally, and that glutamine then aids with anticeptabolism, that does not substantiate the claim. I mean, I... Do you agree... Oh, excuse me. I understand that you have a problem with the appellee's expert, but they did produce evidence to the effectiveness of the product. Your Honor, I think the evidence is relatively undisputed that supplemental glutamine does not do anything. And it's also undisputed that endogenous glutamine does a lot of stuff, and that's what the district court cited. At the very least there, I think there's a fact dispute there. But frankly, the district court explicitly held that evidence about the supplemental form was not required. And so that's the error that I'm complaining about. But I think the actual, to my read, the actual evidence is pretty clearly in our favor, undisputedly. At the very most, you could say that there's a fact dispute about that, and that the court needs to resolve that. But that would require some sort of remand, because the court here did not do the right analysis. It applied the wrong legal rule. Just for clarification, you're not disputing that endogenous glutamine has some benefits, such as aiding in muscle recovery? No, that's exactly what it does. Okay. Yeah. Yeah, I mean, that's the problem, is that the district court, in its opinion, it cites all this testimony about endogenous. And it says, look, we all agree. And the answer is, right, like that's what the endogenous form does. And then the court says, well, the evidence about the supplement form is irrelevant. And that was the error. Moving on, Your Honor, Judge Crane, your call, every other, no court has directly addressed this, but every other court that has looked at evidence has always looked at evidence about the supplemental form, including in cases where it existed in both forms. I'm talking about the Cresto cases, the Dacauer cases, the Apache, Sonner, Racy's, all those five cases, and those courts analyzed evidence about the supplement form. And in the Kaufman case, and this case here, that court also looked, this court looked at evidence about the supplement form, although the nutrient there existed only in supplement form. But in the Cresto case, the Ninth Circuit, that was glucosamine. Glucosamine exists in both forms, but the court still looked and required evidence about the supplemental form. And so you don't get a get out of jail free card here just because your body just happens to naturally produce the ingredient. Furthermore, the FDA guidance here clearly requires evidence about the supplemental form. In fact, it goes incredibly far. If you look at what the FDA requires by its guidance, it is studies on the exact population at issue, using the exact dosage at issue, doing basically a hardcore analysis of does this actual pill work. I'm not sure, you could argue that the FDA goes too far there in another case, but what's clear is that the FDA requires analysis of the supplement form itself, and that's all this court needs to hold. The FDA held the same thing. And by the way, Vitamin Shoppe, briefly- Are there any courts that have held that? Had upheld about the FDA guidance? No, about, I'm sorry, well, or either have found the FDA guidance bears on a structure function claim. So lots of courts, when analyzing the evidence, have analyzed the supplement form, including where there's both forms. No court has held that you get this get out of jail free card here. Two courts that I know of have analyzed, have referenced the FDA guidance here, Greenberg and the court below, and both of them disregarded them in the footnotes. And so, and I wrote this on my brief, and it's true. If this court wants to affirm, it's gonna do so in the teeth of the FDA. And that's fine, I mean, the FDA gets it wrong. I'm not saying that it gets it right. And this court has the power to do that. But don't, you know, Vitamin Shoppe suggested that somehow the FDA's guidance does not contradict its position. That's just wrong. The FDA's position here is clear, and it's my position. That's also true for the FDA's regulations, not just the guidance themselves. The regulation, which of course, are controlled under Chevron, they're a little bit, they're not as directly on point, because they're not about the structural function claim itself, but it, when providing, well, it is, because those regulations are about when is a claim a structural function claim, versus when is it an applied disease claim? And the regulations say, in analyzing that, you have to look at exactly how the drugs actually used, you know, all the specifics of use and of the pill itself. And my point is simply that, if the FDA regulations require that, for that purpose, then that buttresses the idea that they require evidence of the supplement form here. I am, I'm happy to answer any other questions about this specific point, about what evidence is required. Again, I think the evidence, to me, the law is clear that what's required is evidence about the supplement form. Judge Thompson, I'm happy to answer any further questions about the record. I humbly submit that if the court agrees with me on what the law requires, that there's no way this court can affirm based on the current record. At the minimum, it would be some sort of remand, but I don't think you could say that, if evidence about the supplement is required, that it exists in this case. Council, you mentioned Greenberg, and Greenberg states that, in Greenberg, the panel said that the only requirement is, for substantiation, that the ingredients function on the human body be supported by the claim. So, the ingredients function on the human body, wouldn't you say that it's the naturally occurring, or the one in the bottle, the supplement? So, Greenberg's a tough case, because Greenberg never actually addresses the question here. If you look at that case, I've read it one bajillion times, and it never says anywhere whether it's analyzing evidence about the supplement form, or the endogenous form. It just focuses on the ingredient, in this case, glutamine. Yeah, that's what the court held. So, I mean, I am not up here saying that Greenberg is a great case for me. I think it's distinguishable. I don't think it answers the question. I think if you want the better case, go to Kauffman, because Kauffman is cited for the same proposition, and that's from this court, where this court, but importantly in Kauffman, this court analyzed evidence about the supplement form. And then the court, and let me address this straight up. Then the court holds this, which is what Vitamin Shoppe focuses on. They say, any nutrient that, for example, the heart needs, might be described as supporting heart health, even if taking the supplement form actually does nothing to improve the heart. Two things. Number one, that line says the supplement form of the nutrient. So, the court is still looking at the supplement form, and then what Vitamin Shoppe then admits is the next thing, dot, dot, dot, as long as the claimed beneficial function is substantiated. The claimed beneficial function is substantiated. Here, the claimed beneficial function of the supplement form of glutamine has not been substantiated. So, I love Kauffman. I think Kauffman's directly on point. I don't think Greenberg is. But doesn't Kauffman also have the issue that Vitamin E could be helpful, but also could be harmful, and that was the problem? The court did mention that. One point about that, that distinction between harmful and helpful was directly addressed by the Ninth Circuit in the Dachauer case, and then Kressler after that. I think that's the red herring. What happens, I get Your Honor's point, right, because here's a claim that's substantiated, that it does what it says. Here's something where it harms you, and then there's this middle ground where it doesn't harm or help, and where does that go? What the Ninth Circuit clearly held in Dachauer and then Kressler, because it addressed that exact argument, and it said that you still, in that middle ground, there still has to be, that's not enough, because the claim, the beneficial function has to be substantiated, and that you don't have to, it's not merely cases where it causes harm that a defendant loses here. It also loses if it does not substantiate its claims as required by the statute. If Your Honor's concerned about that question, I would urge the court to read the Kressler case and the Dachauer case, because they directly address that argument, which defendants have been making. Oh, you know, I win unless this pill causes you to fall dead. No, they lose if it causes you to fall dead, yeah, but they also lose if you take a pill and it does not actually affect the body's structure or function as the label claims and as Congress has required. I'll reserve. Thank you. Thank you, counsel. At this time, Attorney McDonald, please introduce yourself on the record. Thank you. Good morning, Your Honors, police and court. My name is Michael McDonald from Gibbons PC. I'd like to address a couple of specific points unless the court has a specific order. I'd like to first address the substantiation question under the structure function statute. And then if not completely covered, I'd like to separately address some of the comments from counsel. So we know that the structure function statute specifically permits general statements about a dietary supplement. And the statute also requires that the statements be substantiated. It's the statements that need to be substantiated, not what's not stated, right? In Plaintiff's theory of the case is what's not stated on the label has to be substantiated. So there's been a lot said here today, and there's been a lot said in the briefs. And I think that really what the answer to this case is relatively direct. It's in the cases, it's in the statute, and it's in the record. And so I would direct the court to look at what the plaintiff's expert was retained to do on this case. And his expert report, it's at page 156 of the record. He was retained to determine whether the ingestion of the products in accordance with the manufacturer's recommended dosage or usage will provide the represented claims or benefits. Can we turn to the Body Tech glutamine label? That's the one that specifically mentions supplemental glutamine. So how do we read that not to refer specifically to exogenous glutamine? Like if we're looking at actually the label itself, that one refers to supplemental, right? It does not refer to the label itself. First of all, the phrase supplemental glutamine in that statement, I think the court has to look at the statement in context. There are three general statements on the label about glutamine. And what the statement is describing is how glutamine acts in the body. What's the mechanism of action? How does- What was the purpose of throwing in the word supplemental? That's what counselor is asking us to grapple with. I can't speak to what the purpose of including that word, but I would suggest that by looking, and if I could just pull up the label, I'm referring to it, it's at page 140 of the record. It starts by saying that glutamine is the single most abundant amino acid in the human body. It is involved in regulating protein synthesis and has been showed to possess anti-catabolic effects. To help preserve muscle. The statements and the message continues, right? Intense exercise can deplete glutamine. However, supplemental glutamine is thought to replenish these stores. And so what that means is, yes, a dietary supplement containing glutamine is thought that it could replenish the glutamine that has been depleted in the body. And that is specifically, according to the FDA, a claim about replenishing a depleted nutrient is a proper structure function claim. So according to the statute itself- Why should that not be viewed as a reference to the product since it's the label on that particular product? Well, I mean, I guess in theory everything relates to the product, right? But the statements about the nutrient are not representations that the product is going to deliver certain benefits. And that's the theory in the case of the plaintiff's expert and of the plaintiff's complaint. And so that's not what the statement is read to mean. It's a general statement about how the nutrient glutamine acts in the body and how glutamine can maintain proper function in the body. But the statement is, however, supplemental glutamine is thought to replenish these stores allowing for enhanced recovery. The statement isn't glutamine is thought to replenish. Supplemental glutamine, yes. So glutamine as a dietary supplement, generally. Glutamine is sold by dozens and dozens of companies. The statement is not saying, as the plaintiff's expert interprets it, that the purchase of this product will result in the user achieving these benefits. It's simply saying, as the FDA specifically allows and as Congress has allowed, to make general statements about the mechanism of action or the maintenance of proper structure and function. And so as the statement is describing how glutamine in your body can be depleted from intense exercise, it's also explaining how you can replenish those depleted stores. Just like if you're taking vitamin C, right? You need vitamin C to help your immune system. You're replenishing the vitamin C that may be depleted. That's the gist of the general statement that's being made here. But I don't want to lose sight of perhaps what's more important here, right? And that is, there's no prohibition in the statute or the regulations that a label statement cannot refer to the product. But in this case, it certainly does not. And if I could just get back for a second to the issue that the plaintiffs are concerned about in this case. We've heard this argument that what's crucial here is the difference between exogenous glutamine and endogenous glutamine. Again, I would look at what's in the record on that. And the plaintiff's expert has issued a report in this case based upon what his charge was. And his opinions are that the ingestion of the products at the recommended dosage will not provide the benefits that are on the label. And that is, the product will not be effective at this dosage. That's the exact same claim that was involved in Greenberg. Greenberg involved a claim that that biotin would not be useful for most people because most people have enough biotin in their body. And you would need excessive doses for it to be effective for everyone. And the court said, well, that's not what the statement says and that's not what substantiation requires. Substantiation requires that you substantiate the benefits, the structure and function of the claim. So, here, the plaintiffs are arguing that, well, the substantiation has to be for only the endogenous, I'm sorry, only the exogenous form. And you can't rely upon endogenous. To that, I would say, that is completely irrelevant because I think, as counsel Lieber admitted, there's no difference. There's no difference. The plaintiff's expert was not able to say that there's a difference between endogenous glutamine and exogenous glutamine from a physiological perspective. So, what's the point of the argument? You're left with the same point that the statute requires substantiation of the general claims of structure and function. And that's what's going on here. The plaintiff's expert has offered three separate reports in this case. Two of those reports are reply reports where he's replying to the comments of the vitamin shop's expert. Over 300 times, he mentions the dosage and usage and emphasized in his reports, his opinions are all about the efficacy of the product. So, the idea that this case somehow turns on some distinction that has no physiological relevance is really beside the point. Because it's really a distinction without a difference as it pertains to this particular case. And in fact, there is not one case cited by the plaintiffs in their brief that even addresses the distinction. And although counsel has said that these various cases, Dachau and Greenberg and others and Kaufman refer to the supplement form, the courts make no distinction between what type of nutrient we're talking about. The statute says nutrient or ingredient, and that's what we're talking about. So, unless the court has any other questions, I see that my time is running low. I wanted to give the court an opportunity. If there's anything. Nothing, nothing further. Thank you very much. Thank you. Thank you, counsel. At this time, Attorney Sigmund has a two minute rebuttal. Please reintroduce yourself on the record to begin. May it please the court, Mark Sigmund for the plaintiffs again. A couple of very quick points. Number one, the court rightfully focused on the claim about supplemental glutamine on the one label. I have no idea how you can claim that supplemental glutamine replenishes stores of glutamine without them substantiating that supplemental glutamine replenishes stores. I don't understand the argument to the contrary. Regarding that, counsel noted that the FDA agrees that using words like replenishing is fine, and that it's fine for the label to refer to the supplement. That's true. The FDA also requires evidence about the supplement form to substantiate, and that's the point I made in my reply brief. You can't have it both ways. They love the FDA over here, and they hate the FDA over there. That doesn't make sense. As far as this argument of efficacy and opposing counsel's very first argument, I want to be crystal clear ending here. My argument and the law does require efficacy. It requires efficacy, but in a limited sense. Efficacy that the product supports the body's structural function as claimed. If you sell a pill, and you claim that it aids digestion, you do have to prove that it aids digestion, and that is, if you want, you can call it efficacy. You can call it whatever you want. Mr. Sigmund, I have more problems with the words is thought to replenish, because that doesn't say anything. It doesn't say anything about anything. Something is thought to do something? Your Honor, I mean, I would submit that, and as the FDA regulations, and if you look at the regs and the rules state, that those words are interpreted, I think, by a lot of people as, they think that that does mean something. They read that as, instead of is thought to mean does, and that's what the FDA would tell you. That's what the science shows. With all due respect, that's how I would read it, and that's how I think consumers would read it. I don't think that's precisely going to affect the result here, just because it says what supplemental glutamine does. So again, their argument, I wrote this in my reply brief, their argument here is that they don't have to substantiate anything. It's not the law. Thank you. Thank you. That concludes argument in this case.